So I'll call the case of Frederick Washington versus the National Shipping Company of Saudi Arabia. I think you're muted, Mr. Savage. Now I'm unmuted. Yes, thank you. Somebody had to do it. This is a real challenge. But your staff was great at making it work. They're terrific. Thank you. He called me and said you weren't on the call Thursday, Mr. Savage. I said it would done no good for me to be on the call Thursday because I don't understand computers. I had a much smarter person, my secretary. Well, you're here now. So that's very good. Right. I represent Frederick Washington is a longshoreman down here in Savannah. He was badly hurt on the unhooked from a tractor trailer and went down four stories carrying 60,000 pounds. And he has had three surgeries since then. He has more than $100,000 in medical bills. And we're here to visit something that Judge Martin visited recently in the spring of this year, which is the case involving Seaboard Atlantic. What's the duty of a ship here, the Saudi Arabian National Shipping Company, when it turns over its ship to be unloaded? In this case, it was foreign steel that was being unloaded from the hull. What's their duty when it's turned over? It started way back in the early 80s with the Cynthia case. And we've had lots of interpretations since then. There are three duties that I think were breached here. The first is a duty to turn over the equipment so that it's reasonably safe for an expert like a stevedore or a longshoreman to use safely. The court came to the conclusion that this was reasonably safe stuff that was turned over. This is despite the fact that it came unhooked and went down four stories. And it's lucky five or six people weren't killed. Only at the last minute did somebody get on a forklift and cut off the Turberg, I'm sorry, the Moffie trailer here. So we think the court was wrong in saying that the duty of turning over reasonably safe equipment was met. The second thing that we're visiting here is the duty to warn the vessel owner. Did the shipping company of Saudi to warn? The key document here, which was turned over to us by Mr. McRae is a very good lawyer, as you're about to see, by the Saudi National Shipping Company is Exhibit C to our experts, deposition Hank Milam. In that document, the shipping company knows that their equipment has to be checked on each time that somebody is going to drive the Moffie trailer. Counsel, don't you have a more fundamental problem? I understand that the district court ruled in one particular way with regard to the turnover claim, because that was the law at the time. But as you pointed out, Judge Martin authored an opinion, Troutman, that we've asked the parties to be prepared on. And the issue there is whether the open and obviousness, the openness and the obviousness of the problem that you're identifying, the safety problem that you're claiming. And here, as I understand the evidence, and this is where I am, and I'm only speaking for myself, my question to you is what genuine issue of material fact was created in the evidence where Mr. Manning testified that he knew immediately that there was no chain, and in fact went to his stevedore supervisors to report it, and that Mr. Dotson also knew that there was no chain that was obvious to them because they had used equipment that had chains all the time. What disputed evidence was there with regard to that evidence that was presented by the opposing side? The safety hazard has become a red, the chains become like a red herring in this case. The safety problem in this is that the Moffey trailer, as their warnings were told to them by the manufacturer of the gooseneck that connects the turbo tractor to the trailer, they were told that these Moffey trailers could come off when they're on a slope, and that the driver each time should check to make sure that they're secure. The hazard here is not only that they didn't have safety chains. The hazard here is that these Moffey trailers have a propensity to unhook from the gooseneck, and that's a warning material. It's a different safety issue. But doesn't the safety change take care of that? As I understand your expert's testimony, your expert said this accident would have been prevented if not for safety change, and that the testimony of Mr. Manning and others who worked was that if there had been safety chains to the extent that the Moffey trailer did come off the tracks, that it would have been prevented. Isn't that the undisputed testimony? It is, but I mean the problem with the safety chains is that that's a guard here. They fail to pass on all these warnings here, so I guess what we're saying is it's okay, because this is a big deal. I mean we live in the second fastest growing port in this country. It'll double in size by 2030, that it's okay not to pass on any warnings that say that these Moffey trailers can come unhinged, and you've got to check the connection each time you drive it. This driver gets off of the Moffey trailer each time he picks up a load, each time he does it. He's never told the safety warnings that they know about, and the duty under Cynthia is pass on safety warnings, pass on you know good equipment that'll work. The safety chains aren't the key to, they would have prevented it, but they're not the sole key to why this happened to this man. They're almost a stop to argue anything else, because their warnings in the material they handed over to us say you got to get off every time and check the interconnection between the Moffey trailer and the gooseneck. We never know that, and then who do you have to warn? I mean that's the kind of thing I struggled with the last few days reading it, and in the case, I mean Frederick Washington is a, he's not like Mr. Troutman. He is an innocent bystander at the anything about the warnings that say these Moffey trailers, when you take them up slopes, have a chance to come apart. Do you agree that it was open and obvious that there weren't safety chains? Not to the guy who got hurt. It was open and obvious to Manning. Is that good enough? Let me rephrase that, to an expert, Steve Adorman. Yeah sure, I mean he's got eyes, but that's not the point. The point is the safety hazard they never warn about. The safety hazard here is that the Terberg pulls through a gooseneck. You know they know this equipment's bad. The first thing that they did, Saudi Arabian shipping company, is stop using this equipment. So now look, I mean that kind of analysis is clearly barred by the rules of evidence. I mean that you couldn't argue that. With all due respect, I could argue it all day long because the fact of control matters as to what happens later. No, no, but the inference that you're trying to draw there, which is that they've stopped using it, therefore it was defective, is an inference that the rules of evidence preclude a jury from drawing it, right? That would be the instruction we would give to a jury at trial. We'd say you can't draw that. I would respectfully differ with you. I've tried hundreds and hundreds of cases. That's the only good thing about being this age, and I would say the right of control, always who did things with the device later, is admissible. No, you could get the evidence in, but my point is you wouldn't be able to draw the inference of negligence based on the evidence that you got in. You would get it by arguing that you were establishing some fact that was not negligence. What we're saying is we say the chains didn't do it the way Judge Baker did here, is that we're saying you don't have a duty to warn under Cynthia. That's not the law. The law is they should have passed on that we're sitting here with a warning sheet that tells us when you pull this stuff up a ramp. It's like being in an underground garage in Atlanta or Miami or wherever anybody's from. Maybe they have them there. I don't think so. We're working on it. As an aside, our friend Jerry Lumley's really sick now. Oh gosh. Very sick. Great man. Yeah. It's a sad time. Yeah. You've got to pass on these safety warnings. I mean the reason this port is growing like it is, is not all because of the Georgia Port Authority. It's a lot and they ascribe that benefit to us that we move this equipment. These guys have got to be protected. They've got to pass on warnings. That's what Cynthia says. When you just say, well the safety brake didn't work here or the alarm didn't work, you didn't have chains, that bypasses the fact that they know on their equipment that the driver is supposed to be told to get off every time and most of this stuff here down in Savannah now. They make sure that the gooseneck is welded on to the Moffey trailer. That's not what was happening here. So if we say, well one safety device was open and obvious it wasn't here, that's not getting it here because I'm not savage in making this stuff up. They handed us the document that says you've got to tell these drivers that they got to check the interconnection each time. I mean simple stuff. You got to tell these drivers that these things are prone to come off when they're going up ramps. That's all that's happening here. They're going up ramps. You got to warn the ultimate guy. I mean you have safety meetings at the beginning. Frederick Washington didn't know any of this stuff. I mean this guy is so different than Troutman who walks among tigers I guess is what the opinion said. That's what you know that was you know. Is the open and obvious test subjective to the knowledge of the particular person who's injured or is it objective to what a reasonable expert stevedore would do? I think it's the latter. It's object to a regional stevedore but does that say because you have an open obvious defect because you don't have chains and you never tell the person that these things have a propensity to become unhinged. Their propensity to become unhinged when they go up ramps. That's okay because one of the many ways you could have protected this longshoreman wasn't done. You didn't tell these people that these things can come unhinged. You didn't tell them that the driver needs to get out. So I mean you're looking at one of the three safety mechanisms and that's good enough. I mean I just don't think that gets it. If they satisfy one of three objectively, I don't think that's where it is. I mean you guys have lots of power. You set lots of I mean I deal with Mr. McRae almost daily who I love. He's a great lawyer and we just differ on most things in life but he's a great person and great lawyer. So you're either going to get an opinion that's shoved down these longshoreman's throats saying well if you just warned about one opening an obvious defect, that's good enough. This is the manufacturer of this setup. It's their equipment. They wanted these longshoremen to get use their equipment because they wanted to get out of there. That's what their 30b6 witness Mr. Paul Molley Madsen said. They asked us to use their equipment. It was a combination of approval of the equipment to get out of here. They want to get out fast and we use their equipment. Are we saying that you can do a halfway good job of warning that passed on no warnings? You can say that we don't have to tell these guys that we know that this stuff can come apart when it goes up ramps. We know it and you guys can protect yourself by getting out and checking the connection each time because we don't have safety chains. That's not where we should be. I realize there's too many lawsuits. There's too many plaintiff's cases. I'm I guess a union lawyer but I mean it's just people. There are two big losers in this case. Frederick Washington and Ports of America. If you understand and I know you do you're smart people you wouldn't be where you are. The comp thing they you know Ports of America put up all the money to treat Frederick and stuff. They got a lien that's lock solid on this thing. So I mean there's lots of losers when we let Saudi Arabia shipping company come in and don't pass on any of these problems that they know about because their safety stuff that they gave us showed what they should have done and they didn't do it. I'm not going to respond. We've got you some time for rebuttal. I mean I don't like people to tread on things. I'll just sit here and listen to Mr. Frey and you know I'll finish. You set a standard when I argue a jury trial I guess at 67 I pat things and but I mean and I believe you set a standard in this community for safety and you know we we all should be doing well. This port is a huge economic engine and a lot of people should get praise for it but one of the guys are the longshoremen and we should have protect them by merely asking the Saudi Arabia shipping company to pass on what you know a duty to warn about these things and thank you for your time. I got well we're going to let you have your rebuttal. That's all right. I'm going to listen to Mr. McCray and all right well thank you and he's a very good lawyer. I just differ with him. I'm trying to get him to become the U.S. attorney so I won't have to deal with him so much so he won't beat me so much but he's declined so much so far but he's a good person. Thank you Mr. Savage. Mr. McCray, you've got big billing now. I better live up to it. May it please the court. Thank you your honor. Colin McCray representing the defendant at the lead national shipping company in Saudi Arabia doing business under the trade name of Bari. The issue before this court and the only issue before this court for consideration today is whether a shipowner violates the turnover duty of safe condition when the vessel is turned over with its equipment to the stevedores with an allegedly hazardous condition that is open and obvious in nature and which experienced stevedores can work with to a reasonable degree of safety. The district court correctly ruled that the owners of the vessel the Bari Hufus violated none of these duties and in particular the turnover duty of safe condition which was the only issue raised by the appellant as error in this case. The duty to warn that Mr. Savage discussed was not enumerated or discussed as error in this in the appellate paperwork submitted by the Savage firm. As Mr. Savage acknowledged and as Judge Luck questioned about this case and as we learned from the alert from the court a week or two ago this case fits squarely within the rule that was recently announced by Judge Martin's panel in Troutman v. Seaboard as the 11th circuit has now joined the 5th circuit and others in saying that the open and obvious defense does apply to turnover duty of safe condition cases just as it historically has in the instance of turn of the duty to warn cases. And despite the law in the 11th circuit being somewhat in limbo at the time that Judge Stan Baker the district judge issued his opinion he forecast or he foreshadowed the ruling that would eventually come down in the Troutman case by focusing on two principal issues whether or not the absence of safety chains was open and obvious and whether the equipment at issue the with reasonable safety to Mr. Washington and his fellow longshoremen. He Judge Baker correctly concluded that there was no material dispute over whether the presence or the absence of those safety chains was open and obvious and I think that Judge Luck you got Mr. Savage to concede that that was an open and obvious condition the presence of the safety chains which again is the only condition that has been raised in the appellate paperwork submitted by by the appellate here. So I think we've got a concession to that extent and I think that Judge Luck you pointed out the driver himself he pointed it out to the stevedores Mr. Dotson being the supervisor and said hey look there's no safety chains on this you know I'm concerned can we move forward. The stevedore and company which was SSA it wasn't Ports America it was SSA they determined in their independent exercise of discretion they determined that it was safe to use and that's important because there is that that gulf between the ship owner and the stevedore. The ship owner under you know Howlett and other cases is it has what the Trautman court called a rightful expectation that the stevedore will carry out their task properly and that they will avoid exposing the longshoremen to unreasonable hazards. Now by undertaking that effort to view the equipment at issue prior to its use the stevedore and company again exercises independent discretion and determined that a moffy could be used safely even in the absence of safety chains. So moving on from the open and obviousness because I think we've got a concession from appellate's counsel that it was indeed open and obvious the second prong of that inquiry that we now have under Trautman is whether or not that equipment could be used with reasonable safety. That ended up you know garnering a lion's share of the attention at the district court level and Judge Baker identified a litany of factors that went into his determination that the that this equipment could be used with reasonable safety. For one thing the operating manuals for the turbot and for the moffy neither of them showed any requirement for use of safety in fact the diagrams depicted in those operating manuals didn't even depict any safety chains being used. In addition Judge Baker focused on the fact that the stevedore and company SSA had access to alternate equipment if it determined in its independent exercise of discretion that this equipment could not be used with reasonable safety and in fact they were using alternate equipment simultaneously with this equipment that they requested of the vessel and I would like to correct Mr. Savage on that. The vessel did not ask them to use this equipment it was just the opposite. The SSA stevedores asked that we allow them to use our equipment. We had them sign an indemnity letter. We have a stevedore services agreement in place that says that they are obligated to inspect that equipment and determine in their own exercise of discretion that it can be used safely and as to this subsequent remedial measure that Mr. Savage made passing reference to the shipping line has indeed come to a decision after this incident not that this equipment won't ever be used it's that we're no longer allowing stevedores to use it because we don't want to run the risk of stevedores perhaps not undertaking the necessary steps that they are obligated under their contract and under OSHA regulations to undertake but moving on in addition to that alternate equipment that was sourced from the shore that did not require safety chains because it had an affixed gooseneck that was permanently attached to the moffy and therefore did not require safety chains they of course had that contractual authority and indeed obligation to inspect this equipment. This uncoupling incident had occurred at the end of the using this terberg and moffy combination without incident. Judge Baker also pointed out that SSA had safely used terbergs and moffies without safety chains on internal ramps of roll-on roll-off vessels railroad vessels from years and they had done that not just on Bari ships but on on other shipping lines railroad vessels. Bari as a shipping line had never experienced the kind of unfortunate incident that occurred here and as noted earlier there is of course the OSHA regulation applicable to SSA as a stevedore employer that they are required to ensure that any equipment that they provide to their longshore employees can be used with reasonable safety. One important item that did not make it onto the list of factors pointed to by Judge Baker in his district court opinion that we think in our humble opinion maybe is the most forceful item on the issue of whether it can be used with reasonable safety is the fact that the engineering of this terberg tractor is such that it has a swiveling seat that allows the driver to operate it in forward and reverse with connection points on either side meaning that this combination could be used in reverse where the the moffy trailer is pushed up the ramp with the terberg trailing behind meaning there would be no need for safety chains. That's not just me coming up with that argument counsel that was asked of Mr. Manning the long-term experienced ILA driver of this terberg who admitted in his deposition that that was an available option. To quote him he said if you push them off you wouldn't have to worry about nothing detaching because you're pushing it up a hill. If you are pushing it up a hill it won't detach whatsoever so no need for safety chains and he admitted that there was nothing about the orientation of the vessel, nothing about the orientation of the stow and that hold that would have kept him from carrying out the discharge of the cargo using that moffy trailer going up the internal ramps in relatively speaking in reverse that would eliminate the need for safety chains. I bring that to the panel's attention because that is further proof that this equipment can be used with reasonable safety even in the absence of the safety chains that has been the singular item identified by appellant's counsel as the condition that is at issue in this case. Quick question, how as a practical matter would one go about attaching safety chains to this equipment? I was under the impression that there actually is no sort of connector to attach safety chains that safety chains are not contemplated to be used. Am I right about that? That's right your honor and in fact I think we included a explanatory demonstrative picture of the terberg and gooseneck at issue and there was some explanation perhaps I'm not brief but there would have to be d-rings mounted on the side of that gooseneck to which a chain would be attached on one end then run down to the front bumper if you will of the moffy where another d-ring would be attached so there wasn't even a d-ring attachment or mount as it's called that would have made safety chains an option for this this terberg. You say attached you mean like through a manufacturing process or some kind of mechanical process like a soldering process or something like how would you attach? Yeah I think of it as like a carabiner at the end of a chain the carabiner opens up is fixed into the d-ring mount and then that little piece would flip back I mean we're talking about huge you know hundred pound carabiners but that is the the attachment that would go into that mount but as your honor points out there was no mount on the side of this of this gooseneck therefore it could not have accommodated a safety chain and the important point on that is that it was readily apparent as you can see from the picture we provided in our in our brief it's readily apparent to anybody operating this this terberg and gooseneck and moffy combination that there was no opportunity to use safety chains again open and obvious and something that can be used with reasonable safety even in the absence of safety chains. I do want to address the point perhaps predicting an eventual question from Judge Luck but the the way in which we look at the obligation here whether it's from the standpoint of the injured longshoreman or from the the ship owner and I would direct the court's attention to the portion of Troutman getting near the end of the opinion where they point out that it is as Mr. Savage admits it's an objective determination but what you're looking at is not at Mr. Washington's understanding it is the negligence of the ship that's the only thing in consideration here is whether the ship was negligent not whether Mr. Washington was aware of what was going to happen you know although we would submit that Mr. Manning, Mr. Dotson, his fellow stevedore, Daniel Shepard, even their own liability expert all admitted that this was open and obvious but that's that's not the operative consideration it is an objective standard whether it was open and obvious at all. So with that said I do want to address briefly although I'm not raised by Mr. Savage I feel beholden to address the two cases that were raised as the primary argument in the appellate brief the application of two cases the Martinez case and the Gill case the Gill case from the fourth circuit Martinez case from the ninth circuit the brief of the appellant kind of gave short shrift to the idea of whether this was open and obvious or whether it could be used with reasonable safety instead asking that the court reverse based on these two very old and questionably relevant cases. Gill was a 1982 opinion out of the fourth circuit that involved a stevedore's clamp that failed and hit him in the head it's important right off the bat to note that the Gill case was a duty to intervene case not a turnover duty of safe condition therefore it's you know comparing the proverbial apples to oranges it also perhaps equally importantly it predated Howlett by about more than a decade and therefore it used this analysis based on the foreseeability test of the restatement second of torts section 343 which was expressly cautioned against in the Howlett case saying we shouldn't be importing the foreseeability test of the land-based principles of the restatement into our maritime 905b cases in addition as noted previously you know this was a duty to intervene case where there might be some foreseeability element to it you know the duty to intervene says you have to intervene when a obviously in provident that obvious word right there shows that it actually triggers a violation it's not an actual defense as it is to turn over duty of safe condition the Martinez case from the ninth circuit was similarly pre-Howlett and it in fact relied upon Gill it imported that same foreseeability analysis that was that the Howlett court cautioned us against using it's also readily distinguishable in that it in the context of the safe condition case and it expressly disclaimed in the ninth circuit the use of the open and obvious defense which now of course we have available to us in the 11th circuit I also wanted to just kind of highlight what was being cited for it was saying that the unprecedented nature of an occurrence should not to a discussion about its reasonable safety of course that's cherry picking one thing out of the myriad litany of items that Judge Baker highlighted and saying that it could be used with reasonable safety no one's saying if that had been the sole reason then perhaps there would have been an appropriate use of Martinez in conclusion the district court here correctly concluded that this was an open and obvious condition and one which could be used with reasonable safety by the long and because there's two prongs of the trauma case were met summer judgment was appropriate and should be affirmed thank you thank you Mr. McCray Mr. Savage we'll give you your rebuttal time if you if you want it okay are you still muted uh thank you uh thank you I'm sorry uh you eviscerate the uh Cynthia opinion if you go Mr. McCray's way there is a duty to warn let me read you the warning I think my mother-in-law used to read to me and I didn't like it so I'll make it quick risk of unintended coupling of roll trailers especially on slopes make always sure the gooseneck and roll trailer are coupled correctly before driving I mean where does that count I mean as to whether or not we just raised the issue of chains I pay a lot of money to have a x11 circuit clerk one of our lawyers here uh Brian Tanner who's good he put the issue in there which is did you violate the duties under Cynthia and one of those is the duty to warn here you know I was good enough to point it out to me but you got an interesting issue here which is if it's open and obvious the chains so you hide other things that should be open and obvious if you warn people you hide that the slopes are a problem you hide and you know it and these longshoremen don't know all this stuff you hide the fact that each time he gets off the vehicle he ought to check the interconnection between the gooseneck and the uh moffy trailer because that's what their documents say these guys don't know that what's the answer here I mean because we'll be waiting with bated breath where it's an open and obvious problem does that obviate your problem does that obviate your duty to deliver the ship in a reasonably safe manner I don't think so uh but that's the bun case deals with that the other thing uh that is in our briefing and I don't think it was in our briefing very well in the going to the 11th circuit but is this Ross case out of the middle district which talks about really in this case these guys are the manufacturer of this guys that do this all the time Tyco who's uh down here in Savannah they weld together the gooseneck uh and the moffy trailer the reason you have the gooseneck is because you're going to a higher thing the turbo uh the tractor trailer and you have a lower thing the uh moffy trailer so you got to connect the two they weld them together that truck was being used the Tyco truck right along with the other truck how's it open and obvious that this is not a weld job where the it's not a concession from me to say that it's open and obvious I hope I tell the truth it is but you're going to gut the duty to pass on warnings that these guys know the guys that don't know what they're doing thanks for your time and uh I again commend uh the court for you made it even for an old guy pretty easy and you have good staff and I you know Mr. straight up we just differ and this time he's wrong thank you Mr. Savage we uh hope Mr. Washington is making a good recovery so we appreciate the argument yeah thank you I've represented him in between he got hit over the head with a pipe oh no another thing he's one of my heroes I said look Frederick don't worry about it we can take the guy's property he said I would never take the property of an old man we'll get it from the insurance company got in a fight trying to defend somebody well thank you that concludes our arguments for the day thank you for your time thank you all um reconvene court tomorrow morning at 9 a.m